**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 29 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WEN HO LEE,

Defendant-Appellant.

No. 00-2002
(D.C. No. CR-99-1417-JC )
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **TACHA** , **BRISCOE** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Defendant Wen Ho Lee appeals from a district court order denying his

motion for revocation of the magistrate judge's pretrial detention order. Lee,

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

a former nuclear physicist at Los Alamos National Laboratory (LANL), was indicted on fifty-nine counts of violating the Atomic Energy Act, 42 U.S.C. § 2275 (receipt of restricted data) and 42 U.S.C. § 2276 (tampering with restricted data), and the Espionage Act, 18 U.S.C. § 793 (gathering, transmitting or losing defense information). He faces a maximum sentence of life imprisonment on these charges.

Under the Bail Reform Act, 18 U.S.C. §§ 3141-51, a defendant charged with an offense punishable by life imprisonment may be denied bail if, after a hearing, the government demonstrates by clear and convincing evidence that "no condition or combination of [release] conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. §§ 3142(e), (f)(1)(B). In determining whether the release of a defendant would endanger the community, the court must consider the nature and circumstances of the crimes charged; the weight of the government's evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g).

The magistrate judge ordered Lee detained on the ground that Lee posed a "clear and present danger to the national security of the United States." Appellant's App. at 320. Following a three-day detention hearing, the district

court[1] ordered Lee's continued detention. In a detailed nineteen-page order, the district court found that the government had shown by clear and convincing evidence that no combination of conditions of release would reasonably assure the safety of the community or the nation. *See United States v. Lee*, No. CR. 99-141 JC, 1999 WL 1279142 (D.N.M. Dec. 30, 1999). We review the district court's determination of mixed questions of law and fact concerning the detention decision *de novo*, while accepting its findings of historical fact in support of the decision unless they are clearly erroneous. *See United States v. Kinslow*, 105 F.3d 555, 557 (10th Cir. 1997). We affirm.

Lee is charged with "downpartitioning" nineteen computer files containing 806 megabytes of classified and confidential restricted data relating to nuclear weapons research, design, and construction from secure, separately partitioned, classified computer networks at LANL, and transferring the files to a separate, unsecure computer system.[2] Lee is charged with then downloading seventeen of these classified computer files from the unsecure computer network to nine portable, magnetic computer tapes, and with downloading a classified nuclear

---

[1]    The Honorable James A. Parker presided over the detention hearing because the district court judge to whom the case was assigned was unavailable.

[2]    806 megabytes of data is equal to approximately 806 reams of paper. The computer forensic data showed that it took 70 days over a two-year period to transfer the huge volume of classified files from the classified computer system to the unsecured, open computer.

weapons design code and its auxiliary libraries and utilities codes directly from the secured computer network to a tenth portable computer tape. Investigators located some of the portable tapes in Lee's desk at LANL in March 1999, after he had been terminated from LANL because of an unrelated security breach.

Seven of the portable computer tapes, containing most of the 806 megabytes of classified data, remain unaccounted for. The government presented evidence that the missing tapes contain all of the information necessary to design, build, operate, and evaluate a complete portfolio of thermonuclear weapons, from very simple, easily manufactured weapons, to the most complex thermonuclear weapons the United States is capable of designing. Experts testified that if these tapes fell into the wrong hands, it would "change the strategic global balance," and that the risk "represent[s] the gravest possible security risk to the United States." Appellant's App. at 182, 602.

The district court found that "Lee's release from custody at this time poses a danger to the United States because of the risk that [he] will find a way to, and will be inclined to, reveal to unauthorized persons the location of the seven missing tapes or to assist an unauthorized possessor in understanding and utilizing the information contained in the tapes." *Lee*, 1999 WL 1279142, at *8. The district court found that the nature of the offenses Lee is alleged to have committed are "quite serious and of grave concern to national security." *Id.* at *5.

The district court also found that the circumstances under which Lee is alleged to have acted are "deeply troubling" and "highly suspicious." *See id*. at *5, *7. These findings are not clearly erroneous. *See Kinslow*, 105 F.3d at 557.

The "potentially catastrophic" risk to the safety of the community, indeed the nation, presented by Lee's ability to communicate information about the location of the missing tapes or their contents if he is released pending trial, *Lee*, 1999 WL 1279142, at *9, is unprecedented, but nevertheless, within the boundaries of the Bail Reform Act. In adopting the Bail Reform Act, Congress specifically recognized that the "concern about safety [under the Bail Reform Act should] be given a broader construction than merely danger of harm involving physical violence." S. Rep. No. 225, 98th Cong., 2d Sess., at 13 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195; *see also United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989); *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988) ("The term 'dangerousness' as used in the Bail Reform Act of 1984, has a much broader construction than might commonly be understood in everyday parlance."). Congress recognized that the concept of danger under § 3142 could be "extended to nonphysical harms such as corrupting a union." 1984 U.S.C.C.A.N. at 3195-96. We can conceive of few greater threats to the safety of the community than the risks presented in this case.

Lee contends that his release does not pose a risk to the community because he destroyed the missing computer tapes. In support of this claim, however, he presented only a "broad, non-specific" representation in a letter he signed when he was fired stating generally that he had destroyed all classified materials in his possession. *Lee*, 1999 WL 1279142, at *8. The district court found that Lee presented insufficient evidence for it to conclude that the tapes had been destroyed. *See id.* This factual finding is not clearly erroneous.

Lee argues that the district court violated his Fifth Amendment rights against self-incrimination by drawing an adverse inference from his failure to present sworn testimony or otherwise to provide more specific evidence indicating he destroyed the missing tapes. *See id.* at *8, *9. Lee relies upon *Mitchell v. United States*, 526 U.S. 314, 119 S. Ct. 1307, 1316 (1999), in which the Supreme Court recently held that a defendant who has pleaded guilty does not waive his right to remain silent at his sentencing hearing and that the sentencing judge may not draw an adverse inference from his silence. Lee argues from this ruling that the district court erred in drawing a negative inference from his failure to present sworn testimony that he destroyed the missing tapes.

Lee cites us no authority applying a no-adverse inference rule to § 3142 detention hearings, nor are we aware of any such precedent. We decline to extend *Mitchell's* adverse inference rule to the circumstances in this case. Even

assuming that the *Mitchell* adverse inference rule did apply to § 3142 detention hearings and that the district court's comments would be construed as an adverse inference on Lee's failure to testify, any error would be clearly harmless. The court's comment on Lee's silence was merely cumulative of the court's overall assessment of the evidence in the record concerning Lee's purported destruction of the tapes. *See Chapman v. California*, 386 U.S. 18, 22 (1967).

After an independent review of the record, we conclude that the district court properly analyzed the relevant factors under the Bail Reform Act and correctly determined that the government met its burden of establishing by clear and convincing evidence that there are no conditions or "combination of conditions of release that will reasonably assure the safety of any other person and the community or the nation." *Lee*, 1999 WL 1279142, at *9. We AFFIRM substantially for the reasons stated in the district court's detailed opinion dated December 30, 1999. The appellee's unopposed motion to supplement the record is granted.

ENTERED FOR THE COURT
PER CURIAM